IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PHILLIP E. NEIDIG                                                                                         PLAINTIFF

v.                              CASE NO.         12-2090

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

### I.  Procedural Background:

The plaintiff filed his applications for DIB and SSI on September 15, 2010 , alleging an onset date of December 15, 2007, due to plaintiff's back pain, hernias and ear damage. In the pre hearing memo provided by the Plaintiff's attorney prior to his November hearing he amended his onset date to April 2009. (T. 252).  Plaintiff acknowledged  that he did not stop working until July 2, 2010 (T. 208) and he subsequently amended his onset date to July 3, 2010 (R. 70, 171,

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

176).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on July 27 and November 4, 2011.  Plaintiff was present not represented initially but was represented by counsel at the second hearing.

At the time of the administrative hearing, plaintiff was 53 years of age and possessed a GED.  The Plaintiff had past relevant work ("PRW") experience as a self employed carpenter (T. 200).

On November 22, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's low back pain did not meet or equal any Appendix 1 listing.  T. 15.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of light work.  T. 15.  The ALJ then determined that based "on a residual functional capacity for the full range of light work, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.14."  T. 20

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. RFC.**

The ALJ found that the Plaintiff had the residual functional capacity to perform the full

range of light work[2] (T. 15). The Plaintiff contends that the ALJ erred in this finding. (ECF No. 7, p. 14) and the court agrees for the reasons stated below.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence,

---

[2]Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1. Physical Impairments

The Plaintiff did allege as part of his disability claim that he had "ear damage–can't hear well" (T. 298) but it does not appear that he ever sought an evaluation or complained to any treating physician that he had ear damage. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). During an examination by Marie Pham-Russell, N.P., she specifically noted that Plaintiff "hears normal conversation" (Tr. 296). During a consultative examination with Michael Guyer, M.D., there is no indication that Plaintiff experienced any difficulty communicating as a result of his alleged hearing loss (Tr. 301). Indeed, Dr. Guyer reported Plaintiff was able to speak to him normally, and there was no allegation of hearing loss as a basis for his alleged disability (Tr. 301-302). There is no evidence that the Plaintiff's hearing problem has more than a minimal impact on his ability to work.

The Plaintiff did not allege COPD as basis for his disability claim. The fact that the plaintiff did not allege COPD as a basis for his disability in his application for disability benefits is significant, even if the evidence of COPD was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001). The Plaintiff never complained of breathing difficulty or sought any treatment for COPD and Plaintiff's COPD was never diagnosed until January 9, 2010 (T. 280). At the time it was diagnosed there was no acute infiltrate seen. The Plaintiff was a lifelong smoker but he never exhibited any

effects from his smoking and never had any diagnosis until January 2010. During a consultative examination on November 16, 2010, Plaintiff's lungs and breath sounds were normal. He exhibited normal breath sounds and no wheezes, or prolonged expirations of air (Tr. 296). There is absolutely nothing to show that the COPD diagnosis had the slightest impact on the Plaintiff's ability to do work.

The ALJ first obtained a Disability Physical which was performed by APN Pham-Russell on October 13, 2010. (T. 295-298). APN Pham-Russell ordered x-rays which showed disc narrowing but no "significant osteophyte formations". (T. 299). The ALJ obtained a Physical RFC Assessment from Dr. Greenwood, on November 16, 2010. Dr. Greenwood was of the opinion that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and could stand and/or walk and sit for six hours in an eight hour day. (T. 288). Dr. Greenwood felt that the medical evidence supported a Light RFC classification. (T. 294). Dr. Greenwood's opinion was affirmed as written by Dr. Takach on January 17, 2011. (T. 308).

The Plaintiff's own treating physician was of the opinion in April 2011 that he "should try to go back to work." (T. 313). The court finds no error with the ALJ's development of the record or the interpretation of the record concerning the Plaintiff's physical impairments.

**2. Mental Impairments**

The ALJ did discuss the Plaintiff's depression and noted that the Plaintiff had been treated for his depression from November 2007 to April 2008 (T. 14). The record discloses his sequential treatment for his depression. (T. 329, 330, 337, 323, 331, 326, 332, 333, 327, 334, 335, 336). The discharge summary for the Plaintiff from WACAG states that "pt has reached the goals he set and has shown **significantly less depression**, says he feels great. Believes he has a

positive handle on himself, on his moods, and relating to his children. Goals met." (T. 340). His diagnosis on June 6, 2008, however, remained at Major Depressive Disorder, and Polysubstance Dependence in remission and his GAF was placed at 62. (T. 338). He was told to return to WACAG as needed. (T. 342).

The Plaintiff did report depression to his treating physician in January (T. 318), April (T. 313) and May 2011 (T. 311) but he did not return to WACAG for treatment until September 12, 2011 and the stated reasons were anger, sleep problems, mood swings, depression, relational problems, loneliness, and alcohol abuse (T. 357) and he was initially diagnosed with Major Depressive Disorder, Recurrent, Severe, w/o Psychotic features and Polysubstance Abuse. His GAF was 50[3]. (T. 360). On September 29, 2011 he was diagnosed with Bipolar I Disorder, Most recent episode depressed, Moderate and Poly Substance Abuse. (T. 366). On October 28, 2011 the Plaintiff was seen by APN Alice Slavens who diagnosed the Plaintiff with Major Depression, Post Traumatic Stress Disorder (PTSD), and Poly Substance Abuse with a GAF of 50 and she placed the Plaintiff on Zoloft[4] 100 mg daily. (T. 364).

A GAF (global assessment of functioning) score is not determinative for Social Security purposes. The Social Security Administration has explained that, "[t]he GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to

---

[3] A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000).

[4] Zoloft (sertraline) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Zoloft affects chemicals in the brain that may become unbalanced and cause depression, panic, anxiety, or obsessive-compulsive symptoms. Zoloft is used to treat depression, obsessive-compulsive... See www.drugs.com

the severity requirements in our mental disorders listings." 65 Fed. Reg. 50746, 50764-765 (Aug. 21, 2000), *cited in Jones v. Astrue*, No. 09-3263, — F.3d —, 2010 WL 3396835, * 13 n.4 (8th Cir. Aug. 31, 2010) (Commissioner declined to endorse the GAF scales to evaluate Social Security claims because the scales do not have a direct correlation to the severity requirements in mental disorders listings); *see also Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score not essential to the RFC's accuracy). While not determinative, however, a GAF score may still be relevant. *See Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009); *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003).

The ALJ stated in his opinion acknowledged the presence of the recent records from WACAG but stated that the "claimant's presentation at his hearing in November 2011 did not indicate the presence of severe mental problems." (T. 14). The ALJ then went on to evaluate the Plaintiff's Activities of Daily Living, Social Functioning and Concentration, Persistence and Pace finding that he had only mild limitations. (Id.). One of the requirements stated in 20 C.F.R. 404.1520a (1) in evaluation of mental impairments is to "Identify the need for additional evidence to determine impairment severity".

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001). Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce

their signs and symptoms. *Id.* Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3.

In this case the ALJ did not even discuss the Plaintiff's diagnosis of PSTD which is a separate mental impairment and calcified as an Anxiety Disorder (See DSM IV, p. 429) nor did he seek any consultive evaluation by a mental health professional in regards to the Plaintiffs's depression or his PTSD.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). "The need for medical evidence, however, does not require the [Commissioner] to produce additional evidence not already within the record. '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.' " Howard v. Massanari, 255 F.3d 577, 581 (8th Cir.2001) (quoting Frankl v. Shalala, 47 F.3d 935, 937–38 (8th Cir.1995)) (alterations in original).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala,* 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this instance the court does not believe that the ALJ committed any error in failing to develop the record concerning the Plaintiff's Physical RFC but the court believes that remand is necessary to allow the ALJ to obtain a consultive

mental health evaluation and a Mental Residual Functional Capacity Assessment.

### IV. Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this April 26, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE